Everyone, we have six cases this afternoon, and we will take a break after the third case. First case, and I see the council are ready, is Reyes-Vargas v. Barr, number 17-9549. Counsel, you may proceed. Good afternoon. May it please the Court. Aaron Tern, appearing on behalf of the petitioner, Mr. Reyes-Vargas. This case started off as a fairly straightforward case, but got complicated as it developed. I'm going to try to focus on what I think was initially pretty clear. And it really is just about reading plain English in a statute. The specific statute at issue here is the statute that dictates when an alien and how an alien can file a motion to reopen. And it's pretty clear. It says that an alien can file one motion to reopen under the statute. So everybody gets one motion. This Court has actually been one of the courts that's addressed this issue more than others. But the regulation that was implemented is kind of different. It's difficult. But I want to focus in on the language of the regulation that in this case I think controls. So Mr. Reyes-Vargas filed a motion to reopen when he was outside the country and after 90 days had passed. And he filed that motion with the Board of Immigration Appeals. And the regulation states that the Board may at any time reopen or reconsider on its own motion any case in which it has entered a decision. And then there's a period there. That's important. Because that's really where the sua sponte jurisdiction comes from in the regulations. And there are no time limitations. If you read that paragraph, you go all the way down. And in that regulation, it starts talking then about parties. And when it starts talking about parties and only then, that's when there's all these exceptions and limitations that begin to apply. You've got these 90 days. You've got this time bar limitation, which, by the way, the departure bar, the geographic limitation, which has been considered invalid already by this court. The government, I think, is attempting to- Well, that was on the statute, though. We're talking about the sua sponte motion under the regulation now. Correct. Correct. Tell me why that isn't just an ambiguous regulation that we need to discuss the agency's own interpretation of the regulation. In reading the regulation, I think it's very clear that the regulation talks- when it's talking about the board, it's talking about the board. And when it's talking about an IJ and the BIA, it's talking about the IJ and the BIA. Where the ambiguity comes from, I don't see it. Well, isn't there ambiguity because the sua sponte motion at least says at any time, which seems very broad, you can bring it at any time. But then within that very same paragraph, at least I'm looking at 103.23 now, it narrows it and says you've got to be within- at the very end of that paragraph, right? So doesn't that make it ambiguous at least? It says at any time, but then it says basically you can't. You can't file one at all. There's the post-departure bar. That doesn't appear anywhere. I'm looking at 103.2a where it says the board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. And then there's nothing about the post-departure bar in that paragraph. That doesn't come in until further down when the regulation is referring to parties. And that's where the post-departure comes from. So it's not that it's ambiguous. It's just that the post-departure part of that reg is ultraviolence. Wait, wait. What did you say? The post-departure portion of that regulation, which applies only to parties, is what this court has already ruled is ultraviolence. But there's nothing in that regulation. Well, didn't this court? It was an en banc decision? Yes, in Contreras-Pocahontas. But that was in the context of a timely filed motion to reopen. Yes, yes. I thought it was a different case than this case. I mean, in this case, for one, Boca Negra wasn't talking really about sua sponte, right? I mean, this case is about sua sponte jurisdiction, meaning can a judge actually open his eyes and look at what he sees in front of him? And we're not talking about disputing what he sees, right? I mean, that's a different issue because there's no jurisdiction to review the discretion. But in this case, he didn't even exercise. He didn't get to the merits. He just said, sorry, I can't even look at it. Counsel, could we just back up to a threshold question that the government has raised, and that is whether this court has jurisdiction in the first place. Why should we be deciding this? Isn't this a discretionary matter for the agency? Well, had the agency exercised its discretion in looking at the merits, then we wouldn't be here because then we would agree that you can't have jurisdiction to review a discretionary determination. But they didn't even do that. They simply said, sorry, whatever you're going to say, we can't hear it. And they left it at that. They said we don't have jurisdiction to do that. What's your argument based on our cases that we have jurisdiction? What's your best case that we have jurisdiction? I would say Bocanegra. I mean, under Bocanegra, if there was no jurisdiction there, how did he get in front of the court? I mean, we don't need less jurisdiction. Wait a minute. In that case, we said that the post-departure bar doesn't apply because of the statute. Correct. But this court didn't say it didn't have jurisdiction. Now we have an argument from the government that this court doesn't have jurisdiction. Now, and we have cases in the circuit that speak to that, don't we? Oh, yes. Well, then what do those cases say that supports your position that we do have jurisdiction? Okay. I think I understand the distinction. So there's one set of cases in which there's clearly no jurisdiction. I think the government is trying to find that. Well, do you want to tell me a case? What's your best case for jurisdiction? I haven't heard a single case other than Contreras-Bocanegra, and I don't think that's your case. So let's try another one. Well, let me refer— Can we narrow it to what your proposition is, which is that we have jurisdiction because the government didn't exercise its jurisdiction? Correct. Do you have a case that says that? Actually, one very recent case that—not this panel, but in April, just five months ago, and that case is the Lopez case, which is right on point. It wasn't a published case, but it is right on point. So let me open that one up, and I'll give you the citation. Well, counsel, if it's Lopez from April, I think we'll be able to chase it down. In that case, what happened was similar to what happened here, where the board said, we don't have jurisdiction to even get to the merits of your case, and they declined to exercise jurisdiction. And then it came up, and it was remanded back down, and then the board said, okay, we do have jurisdiction, but even if we did, we are getting to the merits, and we would deny you. And then this court said, well, now we don't have jurisdiction because they actually looked at it, they said no, and it's highly discretionary, and we can't really do much about that. So it's mooted out. Now that they fixed the problem, it's mooted out. And so that's our case. Without the complications— You mean the first—when this court remanded it, it exercised jurisdiction by remanding it. Yes, and so it couldn't have remanded it if it didn't have jurisdiction in the first place. Could I switch gears? Sure. Because we're burning the clock. Is there an exceptional circumstance argument that would get you around the post-departure bar here? I think that there is, and I think that the board has exercised. Now we get into equitable tolling, where you don't even have to get— No, no, I didn't ask about equitable tolling. I asked if there's an exceptional circumstance basis on which you can get around the post-departure bar. Yes. And have you got some authority for that? Yes. Could you develop that argument? Yes, and I think it's a constitutional violation, correct? Padilla, right? What's an exceptional circumstance? And I think that if a constitutionally vacated conviction that makes the initial proceedings invalid from the get-go isn't an exceptional circumstance, I think it's a gross violation of— But Reyes Vargas knew that. He knew that Padilla had been violated and chose not to appeal. That's an unusual posture for you to be in court on. Doesn't that matter? He could have appealed. He could have said, Padilla, and we wouldn't be making these arguments we're hearing today. You know, before I advised him to go home, I told him, look, they're considering this in Ag Fell. We have to go vacate it, and that's going to take more than the time I can even buy you on appeal. And so there's no point. Go home. Let me finish vacating the conviction in Idaho. And when we're done there, then I'll file a motion. My mistake, if the government is right, is what I should have said is let me go vacate the conviction. Let me draft up the motion. And before I file it with the board, I need you to sneak across the border again so that you're here. Why not just appeal and say we're going to be raising it at the DSU because here's the transcript, and everybody knows this is black and white. It's going to take us a little while to vacate the conviction. We'll see you later. Oh, because I get laughed at. I don't get laughed at in court anymore because I don't raise that argument. I used to. They don't care. I mean, I can walk in there and say, but, Your Honor, I got a motion tomorrow pending in the state court. This thing is the prosecutor stipulated that this is unconstitutional. Please stop the removal proceedings. No, sorry. When you get that order, then you come back. If you appeal, then that gives you some time. Yeah, but in detained context, it gives you maybe three or four months before the BIA dismisses it, and then he goes back, and I still haven't vacated the conviction in Idaho. I knew that we weren't going to be able to pull this off in certainly 90 days. I thought best-guess scenario, six months. It ended up taking just under a year, but that's common. I made the call. I said, Look, there's no reason for you to spend money for me to file an appeal to keep you locked up for four months when in reality they're going to deport you anyways because I need more time. So we vacated the conviction, and then as soon as we could, we filed the motion. Well, how long did it take after the conviction was vacated before you moved to reopen the removal proceedings? I'm not sure exactly, but it probably wasn't more than 60 days. No, it was. I think it was more than that. It was more than 90 days. It could have been. The issue is that along this whole process, it all costs money. His poor wife and his family here, they paid a lot, and sometimes it takes some time for them to come up with money. I can tell you that they've been honest continuously to do this, and it costs money. If anything comes out of this case, it's that due diligence, you need to be reasonable about that, especially considering when someone's detained and the head of household and the money earner is deported to a country where he makes $5 a day. In fact, had we not had amicus and a whole bunch of pro bono attorneys helping us do this, we probably couldn't have pulled this off even in the time frame that we did. But believe me, it wasn't because of anything that he did. If anything, he needed some time to come up with the money so that we could continue these steps. Speaking of due diligence, I guess that would have been the other option for you, was to argue some kind of equitable tolling, which you specifically didn't do here. Well, maybe not in name but in meaning. We described how we ran to Idaho and that we'd done this and, you know, his equities. We didn't say it that way because, in reality, I wasn't anticipating the government or the BIA saying, sorry, we don't even have jurisdiction to look at this. Why? Because in the past they've done this. In fact, this came as a surprise. So, no, I didn't technically argue equitable tolling. What do you mean they've done that? They've ignored the post-departure bar? Oh, yes, yes. And we cite the cases in our opening brief where they've done that in the past. So here it's kind of like peekaboo. Sometimes they can see, sometimes they can't. When it's convenient to them, they will. And when, no, they don't, and that's the problem here, right? Either the board can at any time, like the reg says, or they can't. You can't just pick and choose whenever you want. And I think the regulation is clear. I'm going to reserve maybe the last few seconds of my time unless there's more questions. Thank you, counsel. Good afternoon, Your Honors. May it please the Court, Jonathan Ross for the Attorney General. Mr. Reyes's reliance on Contreras offers him no relief because he filed an untimely motion to reopen his case. Although he stands before you today, and if I can best ascertain his government, excuse me, if I can best ascertain his own argument, he wants this Court to apply its holding in Contreras to both timely and untimely motions to reopen. However, the en banc court sitting in Contreras acknowledged even in that decision that the post-departure bar purely applied in that case to the statutory right to reopen proceedings. This case does not, as this Court has already noted, when Mr. Reyes was in immigration proceedings, when his motion to reopen was filed, they never requested a statutory motion to reopen or even that any exception to the filing timeline should apply or that equitable tolling should apply. The motion was simply on its face a concession that it was untimely, and it asked the Court to exercise authority that the agency has given itself, and that's really what makes the statute different from the regulation. Congress was extremely clear in passing the statute on reopening that there was 30 days for a motion to reconsider, 90 days for a motion to reopen. It's a very strict timeline. The government acknowledges 90 days is an extremely short period of time. If anything, the regulation serves as a form of administrative grace that says, we are going to entertain a motion to reopen or our ability, our inherent ability to reopen a case at any time. That's a generous and general window to provide non-citizens who are in this process. And on top of that general authority, they step in and they say, as one limit on this general authority, we're going to put a specific limit in there. If you depart the country, that is a prohibition on reopening. That is the case that we see here, and unfortunately for Mr. Reyes, Contreras does not apply to his case. Well, counsel, so we have a removal based on convictions that now no longer exist. So Mr. Reyes Vargas was removed from the United States, and it turns out that the reason he was removed from the United States doesn't exist anymore. Now, why isn't that fundamentally unfair in a way that can overcome the post-departure bar? There's several answers to that question, and really to Judge Phillips' point at the inception of it, the fact that Mr. Reyes waived his ability to challenge the immigration judge's decision at the time, any potential conflict that he saw with Padilla towards fairness would have been able to be at least addressed by the board had he appealed that decision. More directly to your question as well, at the time that DHS executed Mr. Reyes' removal from this country, his removal order and his conviction were in full accord with the law as it existed. That was part of my question. That was assumed in the question. He's removed when the convictions are on the books, and then after he leaves, the convictions are taken off the books. They're vacated. Now, can exceptional circumstances overcome the regulatory post-departure bar? In terms of exceptional circumstances overcoming the regulatory departure bar, and just really as a predicate matter, that was never a question that was asked or raised. Well, I'm asking you now. I understand. And, you know, the government's first point is that that's not before the court because it's certainly unexhausted. You know, if this court was to say that exceptional circumstances may apply, that would be a question best addressed by the board to consider in the first instance. But, again, without that issue being exhausted and even raised by Mr. Reyes in his motion to reopen, that question is just not applicable to his case. Well, what if the case goes back? What if we say that the agency was wrong, that it didn't have jurisdiction, and then Mr. Reyes is able to make his equitable tolling argument? Isn't it a good policy that we don't want these administrative appeals clogging things up? It would be better if we waited until the person came in. Aha, I've got a vacated conviction. Why is that a bad result? It seems pretty good to me. Judge Phillips, Your Honor, it's a matter of finality in these decisions. And Congress was very clear that they had an interest in making sure that people, that non-citizens who were in this country who were lawfully removed, didn't just get to file motion to reopen after motion to reopen. And that's why there's time and number limitations, but particularly from outside the United States. Understanding the facts of Mr. Reyes's case, and certainly the government is empathetic to the fact that it was vacated, that the government does not contend otherwise that that conviction no longer stands. But at any rate, in the interest of finality and judicial efficiency, the agency can't be expected to just go back and re-litigate case after case, especially when a significant amount of time has passed. Really, how often do you think this actually happens, where you've deported somebody who's been convicted, and then the conviction has been vacated? Is that a common occurrence? It's unclear. You're making it sound as if this is going to be a big burden to the agency and to the government when that happens. But isn't this an exceptional circumstance? Your Honor, the government argues that it's not an exceptional circumstance. Well, I know you argue that, but my question is, is this really all that common? Unfortunately, the record evidence, the certified administrative record in this case, doesn't have any kind of indications. The government wouldn't want to speak extra record as to what types of cases. Well, what you have spoken to, you said you made it sound like there would be a burden as far as re-litigating these things. It's black and white. They come in with a piece of paper. There it is. My conviction's been vacated. The end. There's no re-litigation and days of testimony or anything. We're done. At the same time, too, the purpose of these proceedings, he had every opportunity to appear before the agency and even to lodge an appeal for him to pursue this type of relief. However, Mr. Reyes didn't. And what he's asking this Court to do today is to take the Contreras holding and to give it new meaning, to give it meaning that this Court has never given before and that the overwhelming weight of authority in sister circuits doesn't read into it either. Notably, even the other circuits, and there's many, that have invalidated the post-departure bar as it relates to statutory reopening, nonetheless acknowledge that it's a different context in the regulatory context. Counsel did say that in circumstances like this, where the agency's presented with a request to exercise sua sponte discretion, that sometimes they haven't. Is that an accurate statement? Again, that statement is problematic because he points to specifically three things. If I can go into them just very briefly. Number one, he points to a case that involved an inabstantial order, which this Court and all of the courts of appeals routinely have as a special carve-out for when someone doesn't even know that they're in removal proceedings to begin with. Number two, he does point to one unpublished case before the Board with a dissent also attached to it. The government doesn't view that case as persuasive authority whatsoever, and the Board wouldn't be bound by it. But more so, his list that he provides of Board cases where he contends that the Board sua sponte. As an individual attorney, I'm not able to pull those cases. Those cases weren't submitted in accordance with 10th Circuit rules. However, even if those cases were submitted without some type of indication about how many of these cases the agency sees, it doesn't really give any meaning to that list. As evidenced by the number of cases that come through the 10th Circuit, Lopez that was cited by Mr. Reyes' counsel is one of the more recent ones, and the other circuit courts of appeals, this issue does come up. Would you agree, though, that the agency, EIJ, BIA, could have exercised discretion to reopen, that is to say, we're going to do it even though because we can. There's the post-departure bar, but we have discretion to overlook the post-departure bar. They do have discretion to do that, correct? No, Your Honor. No, Your Honor. I respectfully disagree because under matter of FEFE, the board is bound by its regulations. This was cited in the board's decision that the regulation is on the books that, again, the general grace that has allowed a move-in to ask the court to exercise its general sua sponte authority is limited by the specific limitation of the post-departure bar. And the effect of that is that the effect of that is that. Well, let me put it this way. Yes. I keep circling back to this, but can there be an exceptional circumstances exception to the post-departure bar in the regulation? No, Your Honor, because, again, as I was saying before, under matter of FEFE, the board is bound to follow its obligations. So there is no such thing. There is an exceptional circumstances exception that is in a separate section of the law. But it doesn't apply to this. Is that what you're saying? I'm more than willing to double-check. However, exceptional circumstances, again, because it was an unexhausted issue, is not something that I, like I said, I'm willing to submit a 28-J letter and supplement any response. Why haven't you pushed your jurisdiction argument? I thought you were going to start with that. Your Honor. Do we have jurisdiction or don't we? Your Honor, quite frankly, as Mr. Reyes' counsel really addressed head-on, this case did kind of unfold the more that we worked on it together. And so at this point, the government is prepared to withdraw that portion of its argument with the one notation that should this court find that remand is necessary and the court does address the merits, the immigration court and the agency address the merits later on. At that point, the government would move to say that there is no jurisdiction for this court. All right. I just want to make sure I understand what you're saying because, I mean, you can say that, but we still have a responsibility to determine on our own whether we have appellate jurisdiction. But is it your position now that we do? Yes, Your Honor. And I can explain why. Generally, there's no, and this is standard across the courts of appeals, generally there is no jurisdiction by the courts of appeals over merits denials involving sua sponte reopening. However, at a closer look at the case here, it really wasn't a merits decision. For example, like this court saw in the Lopez case. This is like the, and one correction, too, that the government would like to make. My memory of Lopez does not involve a remand. That was two PFRs that were later consolidated and one of them arising from a, from a, from the sua sponte denial and the second addressing the, as an alternative argument. What's the authority, the statutory authority for a post-departure bar? Where does that come from? I get the 90 days. The 90 days is in the statute. That's correct, yes. But I don't see any post-departure bar in the statute. The post-departure bar doesn't need to appear in the statute because, again, this is purely a creature of regulation. What the agency has done is they've enhanced and expanded what Congress has specifically allowed for it  strictly speaking for the court to exercise or the board to exercise its authority to independently reopen a case. They've carved in a specific limitation. So this is more of, and even when we talk about jurisdiction, we're talking about a mandatory case processing rule, where the board, in essence, says that we are not going, we are going to categorically not consider these cases, as to Judge Mathison's exceptional circumstances case. That's the scope of the regulations. And in saying that we're going to grant this very wide general authority, they're putting in a specific and reasonable limitation on what is almost unbridled authority to reopen. If this court does feel that they can't resolve the regulatory scheme just based on a plain reading of the regulations, then at that point the government asks the court to engage in, to afford, to accord deference to the agency's decision under our deference as modified by Kaiser. Would it be possible, let's say we agree with you, for the agency on its own, sua sponte, to still afford some relief? I'm sorry, Your Honor? Could they sua sponte on their own motion? I realize a party can only file one motion under this regulation, but couldn't the agency still on its own motion even after this case is concluded, and if we find for the government, couldn't the agency still potentially take it upon itself? Because there's no restriction on the number of times. I mean, in the sense that, yes, this was a motion filed under the sua sponte regs by the petitioner, but here couldn't the agency on its own say, all right, we've decided we're going to sua sponte, take this up and look at the merits, despite this proceeding? May the government have some additional time to answer Your Honor's question? Thank you very much. Strictly speaking, per the regulations, the agency is bound by the regulations, and the regulations make clear, no, that the police departures were. Where do they make that clear? I see where a party can only file one motion, but this also anticipates that, for instance, an immigration judge on their own motion, and they're not a party, so that's why I'm asking, could there still be a sua sponte motion by the agency itself? Not a motion as such, but an action. Does that make sense? Yes, it absolutely does make sense, Your Honor, and at least the interpretation of that reading, the exact wording of the regulation, the way that this court interprets it, the way that the board interprets it, and, again, the overwhelming majority of other circuit courts read that as, that language aside, they read it as a limitation preventing reopening. By the agency sua sponte as well as upon motion by the petitioner. I'm sorry, Your Honor? By the agency itself. By the agency and by the immigration judge. The two regulations in question are very similar, although they're structured slightly differently. If there's no more questions, if I can conclude briefly, again, because Mr. Reyes attempts to give a new meaning to Contreras for his untimely motion to reopen, the government asks that you deny the petition for review. Thank you, counsel. Thank you. Thank you. Could we give him one more minute? I have only got 32 seconds. Well, we're going to give you a minute for equal time. Okay. Yes, it is very exceptional to do what we did in this case. It doesn't happen very often. One, you have to understand both areas of the law. Two, it takes a ton of time, and prosecutors fight you tooth and nail. They don't just roll over. And three, your client's deported, and he can't pay you. Once they're gone, very, very few people can do this. And that's scary because he had 23 years as a green card, and it was gone just like that. His whole life was gone on an illegal unconstitutional conviction. And now, if the government's right, there's nothing you can do about it, unless we somehow pull off this miraculous thing within 90 days after he died. Could Idaho re-prosecute him for strangling his wife if he came back? They could. Yes, that's another reason why this is hard. And I tell my clients, are you sure you want to do this? Because I'm opening Pandora's box, right? It's going to cost money. It's going to take time. So, yes, this is extraordinary. But if we don't grant some form of relief, then Padilla doesn't mean anything. It doesn't. Because once the person's gone, who cares? We can just violate the Constitution left and right, not provide public offenders, not provide interpreters, and it doesn't matter because no one's ever going to be able to say anything. That's why you appeal. And then I could appeal, but that's still not enough time. And that just uses money that we should be using to get it done because we're trying to do this in 90 days. It's a very, very complicated thing. If this happens, I don't see the agency getting flooded. This is an exceptional circumstance. With that, thank you. Thank you, counsel. Appreciate arguments from both sides this afternoon. The case will be submitted and counsel are excused.